UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **JOHN WILCOX,** <br><br> **Defendant.** | **Case No.: 23-CR-136 (DLF)** |

### UNITED STATES' OMNIBUS MOTION TO ADMIT OTHER CRIMES EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to admit other crimes evidence, which is relevant to the defendant's intent, knowledge, and absence of mistake or accident, pursuant to Federal Rule of Evidence 404(b). In support of its Motion, the government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

### FACTUAL BACKGROUND

*The Defendant's July 2022 Arrest*

On July 12, 2022, at approximately 22:00 hours, Officers were patrolling in an unmarked police cruiser traveling north on South Capitol Street SE towards Frederick Douglas Memorial Bridge. They observed a 4-door dark blue SUV with a tinted/covered Florida dealer tag[1] in violation of D.C. Code § 18-422.8.[2]

---

[1] A check of the vehicle's tag revealed it returned to Double Choice Autos in North Miami, Florida. The vehicle's VIN revealed no active registration.

[2] D.C. Code § 18-422.8 provides that "[n]o person shall operate a vehicle where the identification tag's identifying numbers or letters are covered with glass, plastic, or any other type of material or

1



The officer initiated the vehicle's emergency equipment to conduct a traffic stop at the intersection of South Capital St SE and O St SE; however, the vehicle continued traveling north on South Capitol Street, slow rolling before coming to a stop at the intersection of South Capitol St SE and N St SE.  Defendant was in the driver's seat, his fiancée was in the passenger seat, and their three-year old child was seated in the rear.

As Officer Carucci approached Defendant, Defendant stuck his hand out of the vehicle holding a Military Identification Card, which was later discovered to not belong to Defendant.

---

substance."



While interacting with Defendant, Officer Carucci observed a clear plastic twist containing multiple-colored zips partially bulging from Defendant's left front linen pants pocket. The zips appeared to contain a substance which he immediately recognized to be narcotics based on his training and experience. Officer Carucci directed Defendant out of the vehicle and toward the rear of the car.

When Officer Carucci attempted to detain Defendant in handcuffs, Defendant pulled away, folded his arms, and became rigid. Despite multiple verbal commands to put his hands behind his back, Defendant refused to comply and continued to argue with Officer Carucci. Eventually, both officers forcibly placed Defendant in handcuffs.

Officers conducted a search incident to arrest, recovering the protruding clear twist from Defendant's person, which contained 18 zips of a tan powder substance, and one clear plastic twist of a tan powder substance. A further search of Defendant's left front pocket revealed an additional

clear plastic bag of (what was later determined to be 4.0 grams of) a white rock like substance. Officers then searched the vehicle, which yielded:

1. A transparent plastic bag containing three plastic twists, which contained 6.4 grams of a pink powder substance, located in the center console;

2. A black Davis Industries "P-32" .32 caliber pistol with a brown grip inside of a brown leather holster, and a clear apple plastic bag containing numerous empty yellow zips, located in the glove compartment. The pistol was loaded with 1 round in the chamber and 3 rounds in the magazine;



3. A locked combination black box containing 5.4 grams of mushrooms, miscellaneous firearms parts including a .32 caliber firearm slide, barrel, and spring, located in the rear seat next to the child's car seat;

4. A multicolored purse containing a black digital scale with white residue, located in the rear seat;



5. Located in the trunk, a black bag containing a black Ruger "Archangel" 5.56 caliber rifle with an obliterated serial number. The rifle was unloaded and no ammunition was recovered.



     During the search of the vehicle, Defendant stated numerous times that everything in the car belonged to him.  The vehicle was impounded by ANA Towing.  Defendant and his fiancée both gave written consent for a search of their DNA.  At the station, the suspected narcotics were weighed and field tested, with positive results for fentanyl and cocaine.



*Top left: mushrooms (5.4g) from a locked combination box on rear seat;*
*Top right: three plastic twists of a pink powder substance (6.4 grams) from the center console;*
*Middle left: clear plastic yellow zips from the glove compartment;*
*Bottom left: 18 zips and 1 clear twist of tan powder substance (6.8g) from Defendant's pocket;*
*Bottom right: clear plastic twist of a white rock substance (4g) from Defendant's pocket*

The FBI Laboratory identified very strong support for inclusion regarding the Defendant's DNA and that recovered from the pistol, and his fiancée's DNA was determined to have very strong support for inclusion as compared to the DNA recovered from the rifle. Results from the Drug Enforcement Administration's laboratory reported that the 4.0 grams of white rock-like substance tested positive for cocaine base, and samples of the 6.8g of tan powder substance in the 18 zips and one clear plastic twist as well as the 6.4g of the pink powder substance (three plastic twists from Defendant's pocket) tested positive for fentanyl.

At the time of his arrest, Defendant had previously been convicted of crimes punishable by more than a year imprisonment in the following cases:

| Charge/Court | Disposition Date and Sentence |
| --- | --- |
| Grand Larceny – CR18F00644-00 – Virginia | 3/3/2019 – 5 years' incarceration (all suspended but time served) |
| Felony Hit and Run – FE-2011-768 – Virginia | 10/14/2011 – 2 years' incarceration |
| Involuntary Manslaughter – FE-2006-875 – Virginia | 8/11/2006 – 10 years' (all but 11 months suspended) imprisonment; 10 years' probation |

*<u>Defendant's May 17, 2023, Arrest and Custodial Interview</u>*

On April 25, 2023, a grand jury in the United States District Court for the District of Columbia returned on an indictment for Mr. Wilcox, charging him with one count of 18 U.S.C. § 922(g)(1) and two counts of 21 U.S.C. § 844(a). The same day, a magistrate judge issued an arrest warrant for Mr. Wilcox.

On May 17, 2023, officers executed the arrest warrant at Defendant's residence. In a custodial interview, Defendant described his ties to drug dealers in the district, including one who traffics fentanyl, whom Defendant had known for two years. Defendant admitted to buying drugs in Columbia heights by pre-arranging transactions via telephone from a man he referred to as "Don," doing so because he "didn't know what he was getting" from other dealers.

When asked whether he used drugs, Defendant stated, "I did," but that he had not done drugs since July. He explained that he was in rehabilitation and went to the methadone clinic every morning. He stated that he knew the difference between fentanyl and heroin by taste, and therefore knew that Don sold fentanyl. He explained, "To be honest, I was trying to sell drugs" but stated that he wasn't "really good" at it. When the officer told him that he knew Defendant's fiancée was

8

using fentanyl (referring to a February 2023 incident where the defendant's fiancée overdosed on fentanyl at their apartment), Defendant agreed.

## ARGUMENT

I.   **THE DEFENDANT'S PRIOR BAD ACTS ARE ADMISSIBLE.**

In this case, the government seeks to introduce excerpts from the custodial interview regarding the Defendant's use of drugs and familiarity with drug trafficking, including fentanyl, within the District of Columbia.

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including—but not limited to—motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Bowie*, 232 F.3d at 929-30 (*quoting United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b). *First*, the evidence must be "probative of a material issue other than character."

*Miller*, 895 F.2d at 1435 (citation omitted).  *Second*, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value.  *Id*.  Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair."  *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material.  The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

Admission of 404(b) evidence is permitted in the Government's case-in-chief, regardless of whether that issue is even disputed by the defense.  *See Bowie*, 232 F.3d at 932.  Indeed, even "a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion." *Crowder II*, 141 F.3d at 1209.

Finally, in a criminal case, the prosecution is required to "provide reasonable notice" to the defense of 404(b) evidence it intends to offer at trial, including "the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." This motion serves to provide that required notice to defense.

### A. The Defendant's Prior Use of Drugs and Knowledge of Drug Trafficking Within the District of Columbia are Relevant to Show the Defendant's Knowledge, Intent, and Motive to Possess Firearms and Controlled Substances

10

In this case, the Government seeks to use 404(b) evidence, the defendant's statements from his custodial interview regarding his prior use of and knowledge of drug trafficking within the District of Columbia, which are highly probative of intent, knowledge, and absence of mistake in possessing drugs.

In order to convict the defendant of knowing and voluntary possession of the controlled substances in this case, the government is entitled to present evidence regarding the defendant's prior possession of controlled substances. *See, e.g. United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (prior convictions for possessing firearms and selling crack cocaine admissible to prove knowledge and intent); *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008); *United States v. McGill*, 815 F.3d 846, 884 (D.C. Cir. 2016) (same); *United States v. Watson*, 894 F.2d 1345, 1348-49 (D.C. Cir. 1990) (possession of cocaine subsequent to possession charged in indictment relevant to show defendant's knowledge of cocaine distribution business); *United States v. Moore*, 732 F.2d 983, 987-92 (D.C. Cir. 1984) (prior pattern of drug dealing similar to crimes charged relevant to show intent and admitted over rule 404(b) challenge).

The Rule 404(b) evidence that the Government seeks to admit at trial is the same sort of other crimes evidence for which admission at trial has been upheld in the past. For example, in *Crowder II*, other narcotics evidence was admitted to show the defendant's knowledge, intent, and motive in the possession of the narcotics at issue in the case. 141 F.3d at 1208. The D.C. Circuit instructed:

> A defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them and so forth. Evidence of a defendant's experience in

> dealing drugs — evidence that is, of his 'bad acts' — thus may be a 'brick' in the 'wall' of evidence needed to prove possession. *See* Fed. R. Evid. 401, advisory committee notes.

*Id.* at 1209 n.5; *United States v. Thorne*, 18-CR-389 (BAH), 2020 WL 122985 *11 (D.D.C. Jan. 10. 2020).

Consistent with *Crowder II*, the D.C. Circuit has a longstanding and consistent rule of allowing the admission of "other crimes" evidence relating to the possession of drugs under Rule 404(b). *See, e.g.*, *United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (finding two prior PWID convictions and two firearm convictions "were not only relevant; they were also highly probative of both [the defendant's] intent to distribute the crack cocaine and his constructive possession of the gun and the drugs") (emphasis added); *Pettiford*, 517 F.3d at 590 (finding that prior conviction for distributing cocaine from his car "made it substantially more likely that [the defendant] knew that there was (and intended that there be) crack in the console of the Ford — and that he intended to distribute that crack"); *United States v. Douglas*, 482 F.3d 591, 597 (D.C. Cir. 2007) ("Evidence that [the defendant] previously possessed and distributed crack cocaine to an undercover police officer 'has a tendency to make' it 'more probable,' Fed. R. Evid. 401, both that he knew the nature of the substance . . . and that he intended to distribute it"); *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (finding evidence of prior arrest and conviction for attempted possession with the intent to distribute on the same block was relevant to show knowledge and intent); *United States v. Latney*, 108 F.3d 1446, 1448 (D.C. Cir. 1997) (finding evidence of defendant's other possession of crack cocaine admissible in a trial charging the defendant with the aiding and abetting of distribution of crack); *United States v. Washington*, 969 F.2d 1073, 1080-81 (D.C. Cir. 1992) (finding 404(b) evidence of defendant's prior charges of

distribution and possession with intent to distribute narcotics to be admissible to demonstrate intent, knowledge, plan, and absence of mistake); *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (finding evidence of defendant's prior drug trafficking admissible in PWID trial to show intent, preparation, plan and knowledge); *United States v. Johnson*, 40 F.3d 436, 441 n.3 (D.C. Cir. 1994) (holding that it was proper to admit evidence of a prior drug transaction as bearing on intent to possess narcotics).

Here, the defendant was found in possession of narcotics on his person, specifically fentanyl and cocaine base. During his custodial interview, the defendant made many statements regarding his prior use and purchase of drugs. Indeed, he stated that July of 2022, the same month as his arrest, was the last time he used drugs. He was able to recount the difference between the taste and effects of fentanyl and heroin. These statements are highly probative of how he received the drugs at issue and his intent in using them. Further, the defendant also talked about his knowledge of drug dealing within the District, including his association with a drug dealer, "Don," who traffics many drugs, including fentanyl. Accordingly, given the high probative value of these statements to issues that the Government will need to prove at trial, they constitute proper 404(b) evidence.

### B. The Probative Value is Not Substantially Outweighed by Undue Prejudice.

Evidence admissible under Rule 404(b) is subject to the restrictions of Rule 403. *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984). In this case, the highly probative value of the Government's proffered 404(b) evidence is not substantially outweighed by potential unfair prejudice to the defendant. "The prejudice that the court must assess is the prejudice that lies in the danger of jury misuse of the evidence." *United States v. Mitchell*, 49 F.3d 769, 777

(D.C. Cir. 1995). "While there is always a risk that jurors will misuse evidence of this type to veer into an impermissible propensity inference, this risk, absent 'compelling or unique evidence of prejudice'…'cannot give rise to a per se rule of exclusion.'" *United States v. Harris*, No. CR 19-358 (RC), 2020 WL 6484311, at *3 (D.D.C. Nov. 4, 2020) (quoting *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007)).

There is no compelling or unique evidence of unfair prejudice in this case, let alone any that could not be cured by a limiting instruction. The evidence put forth to the jury on the defendant's possession will be limited in nature – consisting solely of his statements to officers during the May 2023 custodial interview. The limited scope of the proffered evidence will minimize any risk of the jury misusing the evidence or drawing an impermissible inference.

Moreover, any risk of unfair prejudice can easily be cured with a limiting instruction by the court "instructing the jury to consider the evidence only for its proper purpose." *Mitchell*, 49 F.3d at 777; see also *McCarson*, 527 F.3d at 174 ("Where, as here, there is no compelling or unique evidence of prejudice, we deem such a limiting instruction sufficient to protect a defendant's interest in being free from undue prejudice by virtue of his prior conviction(s) being put into evidence.") (internal citations omitted).

The government has demonstrated permissible non-propensity purposes for the statements made in the custodial interview, and their high probative value is not substantially outweighed by potential unfair prejudice to the defendant. Accordingly, the government should be allowed to use the aforementioned evidence pursuant to Rule 404(b).

## **CONCLUSION**

Accordingly, the Government respectfully requests that the Court permit at trial the introduction of its proffered other crimes evidence.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Richard Kelley*
RICHARD KELLEY
Maryland Bar
Special Assistant United States Attorney
Federal Major Crimes Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 304-0932
Richard.Kelley3@usdoj.gov